IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KISHA MCCASKILL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 17 CV 7082 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| BARBARA MOORE, STAFFORD OWENS, LINA THOMAS, SIRLENA THOMAS, CHRISTOPHER CLARK, and PAUL JACKSON, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The six defendants broke into the Harvey Park District office at night and stole the personnel records of the district's executive director, plaintiff Kisha McCaskill.[1] The next day, two of the defendants, Barbara Moore and Stafford Owens—professing to be commissioners of the Park District Board—sent plaintiff a letter telling her that she was fired. She sued in this court, alleging that the six defendants retaliated against her exercise of free speech, defamed her, placed her in a false light, and tortiously interfered with her employment contracts.

Defendants Lina Thomas and Sirlena Thomas were defaulted for failing to appear or defend themselves. The remaining defendants—Barbara Moore, Stafford Owens, Christopher Clark, and Paul Jackson (collectively, "defendants")—move to dismiss under Federal Rule of

---

[1] The facts from the plaintiff's complaint are presumed true for resolving defendants' motions to dismiss. Firestone Financial Corp. v. Meyer, 796 F.3d 822, 826 (7th Cir. 2015).

Civil Procedure 12(b)(6). Moore and Owens also move to dismiss and request attorney's fees under Illinois's Citizen Participation Act.

For the following reasons, Clark's and Jackson's motions to dismiss plaintiff's free speech retaliation claim is granted. The remaining claims against them arise under state law, and because the court declines to exercise supplemental jurisdiction, those claims are dismissed without prejudice. Moore's motion to dismiss is denied on the free speech retaliation and false light claims, and granted on the defamation and tortious interference claims. Owens's motion to dismiss is denied on the free speech retaliation claim, and granted on the tortious interference claim. Moore and Owens's motion to dismiss and request for attorney's fees under the Citizen Participation Act is denied.

## BACKGROUND

The parties have the following positions:

| | |
|---|---|
| Kisha McCaskill | City of Harvey Park District Board, Executive Director |
| | City of Bellwood School District, Human Resources Director |
| Barbara Moore | City of Harvey Park District Board, Commissioner |
| Stafford Owens | City of Harvey Park District Board, Commissioner (former) |
| Christopher Clark | City of Harvey, Alderman |
| Paul Jackson | City of Harvey, Janitor |

Plaintiff Kisha McCaskill supported the candidacy of husband, Anthony McCaskill, for the Park District Board; defendants supported another candidate, Kenneth Henderson. Angry at

plaintiff's support for her husband, defendants wrote on Facebook, and told a local newspaper, that plaintiff was corrupt, never at work, and a "ghost payroller." They also disparaged her marriage, saying that it was wrong, concerning, and a conflict of interest. Whether any of this helped Henderson to win a seat on the Park District Board is unclear, but win he did. The next week, the board was told by the state's attorney's office that Henderson's multiple felony convictions made him ineligible to serve, and the board appointed plaintiff's husband in his stead.

A few weeks later, defendants, joined by Henderson, went to the Park District office at night. They broke the locks, cut the cords to the alarm system, entered, broke the locks to plaintiff's office, and stole plaintiff's personnel file. Moore declared herself president of the board and voted to appoint Owens and Henderson as board commissioners. Somehow, Owens and Henderson joined in this vote to appoint themselves.

The next day, Moore sent a letter to plaintiff telling her that she was being placed on administrative leave. The letter was printed on the park district's letterhead, contained Moore's signature (purportedly as district president), and copied Owens, who was listed as a board commissioner. Later, plaintiff was restored to her position. This suit followed.

## **DISCUSSION**

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). To survive the motions to dismiss, plaintiff's complaint must give fair notice of her claims and the grounds on which they rest. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Her complaint must contain enough facts to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted), citing id. at 570. Her claims are plausible if the court can "draw the reasonable inference" that defendants are liable for what she alleges. Id.

In reviewing the complaint, the court takes plaintiff's facts as true and draws all inferences in her favor, but the court need not accept her legal conclusions. Id. Plaintiff need not "delineate every detail of [her] legal theory," Robertson v. Allied Solutions, LLC, 902 F.3d 690, 695 (7th Cir. 2018), or plead "facts corresponding to the elements of a legal theory." Chapman v. Yellow Cab Cooperative, 875 F.3d 846, 848 (7th Cir. 2017).

**1.      Free speech retaliation**

When a public employee exercises her right to free speech, her employer may not act to deter her from exercising that right. See, e.g., Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006) (listing the elements of a free speech retaliation claim). Plaintiff claims that defendants did precisely that when they fired her for supporting her husband's candidacy, and she seeks to vindicate her rights under 42 U.S.C. § 1983. Defendants' threshold challenge is that because they did not act "under color" of state law, they cannot be liable under section 1983.

**1a.     Moore and Owens**

A public employee acts under color of state law when the act relates to the employee's official duties. Luce v. Town of Campbell, Wisconsin, 872 F.3d 512, 514 (7th Cir. 2017). Moore and Owens' official duties as commissioners for the Park District Board do not involve breaking into the office and stealing personnel files. See, e.g., Wilson v. Price, 624 F.3d 389, 392 (7th Cir. 2010) (holding that when a Harvey alderman had received calls from his constituents about cars illegally parked in front of a car repair shop, the alderman acted under color of state law when he asked the city to remove the cars, but did not act under color of state law when he went to the shop and punched the owner in the head). Thus, the break-in was not an act under color of state law.

Drawing all inferences in plaintiff's favor, however, Moore's and Owens's official duties do involve deciding whether to remove their fellow board members. That is precisely what they did when they fired plaintiff. Moreover, they did so by sending a letter that included: (1) the park district's letterhead; (2) Moore's signature as board president; and (3) a list of board commissioners copied on the letter, including Owens. By invoking their putative powers as board members to fire plaintiff, Moore and Owens exercised power "made possible only because [they were] clothed with the authority of state law." Honaker v. Smith, 256 F.3d 477, 484 (7th Cir. 2001) (citing cases).

Moore and Owens argue that plaintiff's claim is self-destructing—if the ad-hoc board was illegitimate, how could its members have been acting under color of state law? The answer is that, even if Moore and Owens were merely private actors who had carried out an unlawful coup, they still exercised state power by sending plaintiff her termination letter. Private actors become state actors when they exercise "powers traditionally exclusively reserved to the [s]tate." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). Those reserved powers include operating and maintaining municipal parks. Evans v. Newton, 382 U.S. 296, 301 (1966) (holding that a city park could not segregate by race, even though the city had transferred control of it to private trustees, because a "tradition of municipal control [over the park] had become firmly established"). By invoking the authority of the Harvey Park District Board, Moore and Owens exercised a power traditionally reserved to the state—the power to operate the public parks. They therefore were acting under color of state law.

Moore and Owens have a backup argument: even if they were acting under color of state law, they were exercising their discretion as public employees. And if they were exercising their discretion as public employees, the Illinois Tort Immunity Act protects them from liability.

5

See 745 ILCS 10/2–201. Defenses to federal claims, however, are defined by federal laws. Payne v. Churchich, 161 F.3d 1030, 1038 (7th Cir. 1998) (reversing a dismissal of section 1983 claims brought against a public entity and employee, because immunity under the Illinois Tort Immunity Act does not apply to causes of action arising under federal law). Because plaintiff's free speech retaliation claim arises under the federal constitution, defenses based on state law do not apply.

Moore and Owens were acting under color of state law, and the Illinois Tort Immunity Act does not immunize them from liability. Consequently, their motion to dismiss plaintiff's free speech retaliation claim is denied.

**1b.  Clark and Jackson**

Like Moore and Owens, Clark and Jackson argue that they did not act under color of state law. True enough, neither Clark's duties as an alderman, nor Jackson's duties as a janitor, involve breaking into the park district office and stealing personnel files. But if they conspired with Moore and Owens—public employees—to fire plaintiff, they might still have acted under color of law. See Dennis v. Sparks, 449 U.S. 24, 27 (1980) (holding that private citizens can be liable under section 1983 for conspiring with a judge to enter an illegal injunction because "a willful participant in joint action with the State or its agents" acts under color of state law). Consistent with this theory of joint action, plaintiff's complaint must allow the court to draw the reasonable inference that Clark and Jackson engaged in a "concerted effort" with Moore and Owens to fire her for supporting her husband's candidacy. Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998) (emphasis in original).

No such concerted effort can be inferred. Clark and Jackson may have conspired with Moore and Owens to speak ill of plaintiff, break into her office, and steal her personnel files, but

6

that does not allow the court to infer that those acts are affirmatively linked to Moore and Owens' decision to fire plaintiff. See Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) ("[S]ome causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery."). Plaintiff does not allege, for example, that Moore and Owens needed plaintiff's personnel file to serve as a pretext for firing her, and that they could acquire her file only by breaking into her office. Even drawing all inferences in her favor, plaintiff's allegations against Clark and Jackson do not "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Consequently, Clark and Jackson's motion to dismiss is granted on plaintiff's free speech retaliation claim. The remaining claims against them all arise under state law, and because the court declines to exercise supplemental jurisdiction, those claims are dismissed without prejudice. 28 U.S.C. § 1367(c)(3).

**2.      Defamation**

Moore told a reporter for the Cook County Chronicle, "I can never get [plaintiff] at the park district; I call and call and call[.] I don't know what she is doing outside of Harvey, but I can truly tell you that she is seldom at the park district." Plaintiff claims that this statement was defamation per se because it prejudices her in her profession and suggests that she cannot perform her employment duties. See, e.g., Hopewell v. Vitullo, 701 N.E.2d 99 (Ill. App. 1998) (recognizing five categories of statements that constitute defamation per se).

To sustain plaintiff's defamation claim, the court must be able to reasonably infer that Moore's statement was false. See Krasinski v. United Parcel Service, Inc., 530 N.E.2d 468, 471 (Ill. 1988) (listing the elements of defamation). The allegedly false statement must contain an "objectively verifiable factual assertion," and cannot be "vague" and "unprovable." Lifton v.

7

Chicago Board of Education, 416 F.3d 571, 578–79 (7th Cir. 2005) (affirming summary judgment against a teacher who sued her school's principal for defamation after he called her "lazy," and said that she "doesn't want to work," because those statements are not objectively verifiable). Moore's statement about plaintiff's absence from Harvey must be "considered in context, with the words and the implications . . . given their natural and obvious meaning." Chapski v. Copley Press, 442 N.E.2d 195, 198–99 (Ill. 1982).

Moore made two statements: (1) "I can never get [plaintiff] at the park district; I call and call and call," and (2) "I don't know what she is doing outside of Harvey, but I can truly tell you that she is seldom at the park district." The first statement can be understood only in the context of the second. Consider how these hypothetical scenarios change the "natural and obvious meaning" of Moore never being able to reach plaintiff:

| **I can never get her at the park district; I call and call and call . . .** |
| --- |
| Scenario 1      It's because she's a fake employee who's never done a minute of work. |
| Scenario 2      But since the district switched over to a new phone system last month, I've been able to get through more often. |

In scenario 1, Moore's first statement is literal: plaintiff is a fake employee who collects paychecks without working, so of course she cannot be reached at the park district. In this context, never being able to reach plaintiff is objectively verifiable, and may sustain a defamation claim. By contrast, in scenario 2, Moore's first statement is hyperbole: Moore does not mean that she has never reached plaintiff on the phone, but that the Park District's old phone system was worthless. Such hyperbolic statements use words in a "loose, figurative sense," and

therefore cannot sustain a defamation claim.  Pease v. International Union of Operating Engineers Local 150, 567 N.E.2d 614, 619 (Ill. App. 1991).

Thus, crucial for understanding Moore's first statement is her second: "I can truly tell you that [plaintiff] is <u>seldom</u> at the park district."  With that context, Moore's first statement—that she can <u>never</u> reach plaintiff at the Park District—cannot be reasonably understood as anything but hyperbole.  Moore's use of "never" is no more absolute than when a person scolds her habitually tardy roommate for never having been on time for anything in her life.  Language derives meaning from context, and here, that context renders Moore's first statement nonactionable hyperbole.  Cf. Dilworth v. Dudley, 75 F.3d 307, 309 (7th Cir. 1996) ("If you say simply that a person is a 'rat,' you are not saying something definite enough to allow a jury to determine whether what you are saying is true or false.  If you say he is a rat because . . . , whether you are defaming him depends on what you say in the because clause.") (ellipses in original).

Moore's second statement does no better.  It turns on the word "seldom," which is vague and unprovable.  Although "seldom" may be "an easily understood term, its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning." Hopewell v. Vitullo, 701 N.E.2d 99, 104 (Ill. App. 1998) (affirming the dismissal of a defamation claim as nonactionable opinion when an employer had told the Chicago Tribune that its former employee "was fired because of incompetence"); see also Green v. Trinity International University, 801 N.E.2d 1208, 1220 (Ill. App. 2003) (affirming the dismissal of a defamation claim as nonactionable opinion when a university had distributed a letter saying that a professor had been denied tenure for "spen[ding] too much class time on non-course considerations"). Would plaintiff have been "seldom" at the park district if, for example, she had been there 20

hours a week? To determine the answer, a factfinder could refer to no "consensus of understanding" on what it means to "seldom" be at the district. Mittelman v. Witous, 552 N.E.2d 973, 984 (Ill. 1989) (discussing the test for determining if an allegedly defamatory statement contains a factual allegation), abrogated on other grounds by Kuwik v. Starmark Star Marketing and Administration, Inc., 619 N.E.2d 129 (Ill. 1993). Moore's second statement is thus vague and unprovable.

Moore's first statement is nonactionable hyperbole, and her second statement is vague and unprovable. Consequently, her motion to dismiss plaintiff's defamation claim is granted.

## 3. False light

Plaintiff claims that Moore placed her in a false light by making disparaging comments about her to the Cook County Chronicle, and by publicly criticizing her marriage to her husband. These allegations must allow the court to draw the reasonable inference that: (1) Moore's statements placed plaintiff in a false light before the public; (2) that false light would be highly offensive to a reasonable person; and (3) Moore either knew that her statements were false, or acted with reckless disregard for whether her statements were false. Kirchner v. Greene, 691 N.E.2d 107, 115–16 (Ill. App. 1998).

At issue are six of Moore's statements:

1. plaintiff "is seldom at the park district";
2. plaintiff and her husband do not communicate with Moore, even though Moore is a board commissioner;
3. plaintiff and her husband hold board meetings without including or notifying Moore;
4. plaintiff benefits from "nepotism," given plaintiff's husband's presence on the board;
5. plaintiff and her husband "treated [Moore] really terrible" when Moore raised concerns about plaintiff allegedly benefiting from nepotism; and
6. plaintiff should not be married to her husband.

Only the second and third statements can be the basis for a false light claim. The others do not contain factual allegations, and therefore are not actionable. Schivarelli v. CBS, Inc., 776 N.E.2d 693, 701 (2002) ("[S]tatements that are expressions of opinion devoid of any factual content are not actionable as false light claims."). Just as statement one will not support a defamation claim, it will not support a false light claim. Statements four, five and six, like statement one, are too vague and unprovable to be actionable.

Yet, drawing all inferences in plaintiff's favor, statements two and three are enough. A factfinder could plausibly conclude that statements two and three were false, and that Moore knew they were false. Although those statements might seem trifling, even if they are false, Illinois courts have held that an "implication of professional irresponsibility" can be highly offensive. See Moriarty v. Greene, 732 N.E.2d 730, 741 (2000) (reversing the dismissal of a false light claim and holding that a jury could find that a newspaper columnist's report was highly offensive, when the columnist had written that the plaintiff, a psychologist, "admitted that she sees her job as doing whatever the natural parents instruct her to do"). A jury could find that Moore's statements—that plaintiff failed to communicate with Moore, and excluded Moore from board meetings—placed plaintiff in a false light that was highly offensive to a reasonable person. Consequently, Moore's motion to dismiss plaintiff's false light claim is denied as to those two statements.

### 4. Tortious interference with contract

Plaintiff claims that she has employment contracts with the park district and with the City of Bellwood school district, and that Moore and Owens interfered with those contracts. There are five elements of a tortious interference claim: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contract; (3) the

defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. Koehler v. Packer Group, Inc., 53 N.E.3d 218, 237 (Ill. App. 2016).

Plaintiff's tortious interference claim consists entirely of legal conclusions that track those five elements, plus several irrelevant references to her free speech retaliation and defamation claims. She brings the tortious interference claim against all defendants, alleging that "Defendants" knew about her employment contracts, maliciously tried to induce her employers to breach, used their political power to defame her and to punish her for supporting her husband, and so on; none of her allegations is specific to any defendant. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," fail to give fair notice of plaintiff's claim and the grounds on which it rests. Iqbal, 556 U.S. at 678. Consequently, Moore's and Owens' motions to dismiss plaintiff's tortious interference claim is granted.

5.   **Illinois Citizen Participation Act**

The Illinois Citizen Participation Act, 735 ILCS 110, is an anti-SLAPP statute. A SLAPP is a "strategic lawsuit against public participation." SLAPPs are filed to deter people from exercising their first amendment rights to petition the government and to otherwise participate in the public sphere. Moore and Owens argue that, because plaintiff's suit is a SLAPP, the Act compels dismissal and entitles them to attorney's fees.

Under the Act, Moore and Owens have "the initial burden of proving that plaintiff's lawsuit was solely based on, related to, or in response to their acts in furtherance of their rights . . . to participate in government." Sandholm v. Kuecker, 962 N.E.2d 418, 430 (Ill. 2012) (emphasis in original; alteration and quotation marks omitted). Put another way, they must

show that plaintiff's lawsuit is "meritless" and "retaliatory." Id. They have not done so. "Meritless," in the context of the Act, requires Moore and Owens to do "something more" than point to an "unsuccessful legal claim or theory." Garrido v. Arena, 993 N.E.2d 488, 496–97 (Ill. App. 2013). That "something more" could, for example, be "disprov[ing] some essential element" of plaintiff's claim. Id. at 496. Although some of plaintiff's claims are insufficiently pled—and may never reach legal sufficiency, even with leave to amend—none of her claims has been "affirmatively disproven." Id. at 497. Consequently, Moore and Owens have not shown that plaintiff brought her suit <u>solely</u> to discourage them from exercising their rights to participate in government. Their motion to dismiss and request for attorney's fees under the Act is therefore denied.

## **CONCLUSION**

Christopher Clark's and Paul Jackson's motions to dismiss are granted on plaintiff's free speech retaliation claim. The court declines to exercise supplemental jurisdiction over the other claims against them, which are dismissed without prejudice. Barbara Moore's motion to dismiss is denied on plaintiff's free speech retaliation and false light claims, and granted on the defamation and tortious interference claims. Stafford Owens's motion to dismiss is denied on plaintiff's free speech retaliation claim, and granted on all other claims. Moore and Owens' anti-SLAPP motion is denied.

Moore and Owens are directed to answer Count I (free speech retaliation), and Moore is directed to answer Count IV (false light), on or before November 30, 2018. The parties are

directed to submit a joint status report using this court's form on or before December 5, 2018.

This matter is set for a report on status on December 11, 2018, at 9:00 a.m.

**ENTER:** **November 6, 2018**

_____
**Robert W. Gettleman
United States District Judge**